UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BOYD McCHRISTIAN,

    Plaintiff,

        v.                                  CAUSE NO. 3:21-CV-43-JD-MGG

RON NEAL, et al.,

    Defendants.

OPINION AND ORDER

Boyd McChristian, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

McChristian alleges that on December 29, 2019, he was in the chow hall for breakfast, and Officer Anderson said in order to get breakfast, he either had to jump over the rail or crawl under it. ECF 1 at 2. McChristian refused to do either, and Officer Anderson assaulted him. *Id.* The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th

Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving McChristian the benefit of the inferences to which he is entitled, he has stated a claim against Officer Anderson for using excessive force against him.

After the assault, McChristian alleges that Officer Anderson, assisted by Captain Bootz, had him placed in a feces-encrusted room in the back of the infirmary for a week. ECF 1 at 2. He was not given his property or any bedding. *Id.* at 2. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834; *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate

indifference"). McChristian has stated a plausible claim against Officer Anderson and Captain Bootz for putting him in a feces-encrusted cell for a week.

McChristian also complains that as a result of the incident with Officer Anderson, Pam Bane wrongly fired him from his prison job. ECF 1 at 2. However, he has no federally protected interest in his prison job. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated in part on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Therefore, a wrongful discharge, without more, is not actionable under § 1983. The complaint does not state a claim against Bane.

After a week in the infirmary cell, he was moved to D-Cellhouse Lockup, where he remained for 73 days before he received a hearing on a conduct report related to the altercation with Officer Anderson. ECF 1 at 3. McChristian contends that the conduct report was falsified and filed only because he "made a fuss" about his mistreatment. *Id.* at 4. He was found guilty of the conduct report at a hearing in which McChristian alleges that he was not allowed to present witnesses and he was denied camera evidence that would have established his innocence. *Id.* at 3. He was sanctioned with time served in lock-up, but he alleges was not released for two more months. *Id.*

McChristian was granted a rehearing on appeal, but the rehearing was not held within the time DOC policy specified. ECF 1 at 3. McChristian contends that because the new hearing was not held in time, the conduct report should have been expunged from his record and he should have been reinstated to his job with backpay. *Id.* When neither of those actions happened, McChristian filed a request for backpay and his job. *Id.* at 3-4. This seemingly triggered action on his case because he was then retried. *Id.* at

3

4. Officer Houston took over the proceeding and found him guilty based on unreliable evidence, did not hear any of McChristian's witnesses, and committed other errors. *Id.* McChristian contends that Officer Houston had it out for him because of two grievances he had filed against him for "being a peeping-Tom pervert." *Id.*

McChristian does not state a claim for a due process violation based on the asserted errors in his disciplinary hearing because he has not alleged he had a federally protected interest at stake. Federal due process protections come into play only when an inmate is deprived of life, liberty, or property. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). The only sanction McChristian alleges he suffered as a result of the hearing was time in lock-up. This does not implicate the Fourteenth Amendment because a prisoner does not have a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson*, 545 U.S. at 222; *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). However, placement in long-

4

term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage). Here, it appears that McChristian was in segregation for around four and a half months, which is not long enough to implicate due process.

However, conduct that does not independently violate the constitution may be impermissible if done in retaliation for a prisoner exercising his First Amendment rights. A First Amendment retaliation claim require a prisoner to allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010).

McChristian does not state a retaliation claim against Officer Anderson for the allegedly false conduct report, but he does against Officer Houston for his actions in the rehearing on the conduct report. There is no indication that Officer Anderson was motivated by retaliation when he wrote the conduct report. The complaint alleges that "after I made a fuss about my mistreatment 'I' was charged with assaulting the [Officer] Anderson." Without more information about how McChristian "made a fuss" it is not

5

reasonable to infer that McChristian engaged in protected activity. *Cf. Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (expressing doubt that "a *threat* to file a grievance would itself constitute a First Amendment-protected grievance"). Officer Anderson's motives may have been wrong, but there is no indication he was motivated by any First Amendment activity. On the other hand, the grievances McChristian filed against Officer Houston fall squarely under the First Amendment. It is reasonable to infer at the pleading stage that the alleged irregularities at the rehearing were motivated by the grievances McChristian had filed against him.

The remaining defendants must be dismissed. B. Leonard is not mentioned in the body of the complaint and therefore the complaint does not give him adequate notice of the charge against him. *See Airborne Beeper & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667 ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled to under [Federal Rule of Civil Procedure] 8."). As to Warden Ron Neal and "Internal Investigator" the only allegation against them is that McChristian made them aware of the violations. This vague allegation does not establish either was personally involved in the alleged violations as required for liability under § 1983. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.").

For these reasons, the court:

(1) GRANTS Boyd McChristian leave to proceed against Officer Anderson in his individual capacity for compensatory and punitive damages for using excessive force against him on December 29, 2019, in violation of the Eighth Amendment;

(2) GRANTS Boyd McChristian leave to proceed against Officer Anderson and Captain Bootz in their individual capacities for compensatory and punitive damages for placing him in a feces-encrusted cell for a week starting December 29, 2019, in violation of the Eighth Amendment;

(3) GRANTS Boyd McChristian leave to proceed against Officer Houston in his individual capacity for compensatory and punitive damages for using finding him guilty of a false conduct report in retaliation for grievances McChristian had filed against him in violation of the First Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Ron Neal, B. Leonard, Internal Investigator, and Pam Banes;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Officer Anderson, Officer Houston, and Captain Bootz at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Officer Anderson, Officer Houston, and Captain Bootz to respond, as provided for in the Federal Rules of Civil

Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 22, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT